UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GARY A. HILL, SR., ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | |
| ) | No.  1:15-cv-01204-TAB-TWP |
| CAROLYN W. COLVIN, ) | |
| ACTING COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

## ORDER ON PLAINTIFF'S BRIEF IN SUPPORT OF APPEAL

### I. Introduction

Plaintiff Gary Hill appeals the Commissioner's denial of his claim for disability benefits. Hill asserts three issues on appeal: (1) whether substantial evidence supports the Administrative Law Judge's determination that Hill did not meet listing 12.05B or 12.05C; (2) whether the ALJ committed reversible error by failing to summon a psychologist to testify at the hearing; and (3) whether substantial evidence supports the ALJ's step five determination that Hill was not disabled.  For the reasons set forth below, Hill's brief in support of appeal [Filing No. 28] is denied.

### II. Background

Hill filed for disability benefits alleging an onset date of August 1, 2010.  This date falls within a previously adjudicated period, so the ALJ adjusted the onset date to May 11, 2011. Hill's claim was denied initially and upon reconsideration.  On April 3, 2013, Hill testified at a hearing before the ALJ.  At the hearing, Hill's counsel requested a supplemental hearing with a medical expert.  However, the ALJ denied this request because she determined that it was not supported by good cause.  The ALJ denied Hill's claim by written decision on June 5, 2014.

At step one, the ALJ found that Hill has not engaged in substantial gainful activity during the relevant time period. [Filing No. 13-2, at ECF p. 15.] At step two, the ALJ found Hill has the following severe impairments: disorders of the left lower extremity, including degenerative joint disease and history of fracture and skin graft; leg length discrepancy; borderline intellectual functioning; depressive disorder; and a history of alcohol abuse. *Id.* At step three, the ALJ found that Hill does not meet or medically equal any relevant listing. *Id.* At step four, the ALJ assigned Hill an RFC that limited him to medium work with the following limitations:

> The claimant can lift and carry fifty (50) pounds occasionally and twenty-five (25) pounds frequently, can stand and walk each for six (6) hours and can sit six (6) hours during an eight-hour workday; the claimant cannot operate foot controls with the left lower extremity; the claimant can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs, but he must never climb ladders, ropes, or scaffolds; the claimant must have no exposure to hazards such as unprotected heights and dangerous machinery; and the claimant is limited to work consisting of simple, routine, repetitive tasks.

[Filing No. 13-2, at ECF p. 18.] Based on this RFC, the ALJ found that Hill could perform past relevant work as a material handler. [Filing No. 13-2, at ECF p. 23.] Rather than conclude at step four, the ALJ went on the step five. The ALJ questioned a vocational expert about other jobs Hill could perform, given his age, education, work experience, and RFC. *Id.* The VE testified that Hill could work as a hospital cleaner, food service worker, and order filler. [Filing No. 13-2, at ECF p. 24.] Thus, the ALJ concluded Hill was not disabled. The Appeals Council denied review, making the ALJ's opinion final. Hill timely appealed to this Court.

**III.   Discussion**

    *A.   Standard of Review*

The Court must uphold the ALJ's decision if substantial evidence supports her findings. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). "The substantial evidence standard requires no more than such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120 (7th Cir. 2014). The ALJ is obliged to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of nondisability while ignoring evidence that points to a disability finding. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). If evidence contradicts the ALJ's conclusions, the ALJ must confront that evidence and explain why it was rejected. *Moore,* 743 F.3d at 1123. The ALJ, however, need not mention every piece of evidence, so long as she builds a logical bridge from the evidence to her conclusion. *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013).

  B. *Intellectual Disability*

Hill argues substantial evidence does not support the ALJ's determination that he does not meet Listing 12.05B or 12.05C (intellectual disability). Hill asserts that the ALJ erroneously concluded the record lacks evidence that Hill has mental retardation or deficits in adaptive functioning that initially manifested during the development period. The Court disagrees.

At step three, the ALJ must determine whether any impairment meets or medically equals a listing from the Listing of Impairments. 20 C.F.R. § 404.1520(d); *Patterson v. Colvin*, No. 1:14-CV-00468-SEB, 2015 WL 898186, at *7 (S.D. Ind Mar. 2, 2015). The claimant has the burden of showing that his impairments meet a listing by showing that his impairment satisfies all the criteria specified in the listing. *Patterson*, 2015 WL 898186, at *7 (citing *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). The ALJ must then discuss the listing by name and offer more than a perfunctory analysis of the listing. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1).

The introductory paragraph to Listing 12.05 contains two prongs which claimants must prove: (1) significantly subaverage general intellectual functioning; and (2) with deficits in adaptive functioning initially manifested during the development period (before age 22). 20

C.F.R. pt. 404, subpt. P, app. 1, § 12.05.  Additionally, in order to meet the required level of severity for the listing, claimants must satisfy at least one of four paragraphs.  *Mendez v. Barnhart*, 439 F.3d 360, 361 (7th Cir. 2006).  Paragraph B requires a valid verbal, performance, or full-scale IQ of 59 or less.  Paragraph C requires a valid verbal, performance, or full-scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.

Hill argues that the ALJ erroneously concluded he does not satisfy the criteria for the listing.  The ALJ briefly analyzed Listing 12.05, stating the record lacks "persuasive and credible evidence that the claimant has mental retardation or . . . deficits in adaptive functioning initially manifested during the developmental period."  [Filing No. 13-2, at ECF p. 18.]  This analysis is somewhat perfunctory.  However, throughout the decision, the ALJ fully analyzed Hill's functional abilities, noting Hill performs household chores, prepares meals, uses public transportation, shops independently, and helps care for his children.  [Filing No. 13-2, at ECF p. 17.]  The ALJ found only mild limitations in activities of daily living and social functioning because of these abilities.  The ALJ found Hill had moderate difficulties with concentration, persistence, or pace due to Hill's IQ and history of special education.  [Filing No. 13-2, at ECF p. 16.]  Still, the ALJ noted that Hill was attentive to the tasks requested of him during his consultative exam and found that he has no significant deficits in either long-term or short-term memory.  [Filing No. 13-2, at ECF p. 17.]  The ALJ analyzed all the above and concluded that Hill does not have a listing-level impairment.  Thus, the ALJ's analysis of Listing 12.05 was not perfunctory.

Next, the Court turns to whether Hill satisfied his burden of demonstrating that he met the listing.  Hill argues that his intellectual impairment satisfies paragraphs B and C of the listing in

addition to the introductory paragraph. As an initial matter, Hill's severe physical impairments, a history of skin grafts and fractures to his left foot with decreased mobility and an inability to move his left great toe, satisfies the physical requirement of paragraph C. [Filing No. 13-7, at ECF p. 34.] Hill's right leg is 1.3cm longer than his left, and he has moderate degenerative joint disease. [Filing No. 13-7, at ECF p. 40.] The ALJ found these to be severe impairments in her decision. *Id*. Therefore, they impose the additional and significant work-related limitations of function required by paragraph C.

Hill puts forth the following evidence in support of his claim that he meets the first prong of the introductory paragraph: on September 10, 2008, when Hill was 45 years old, he received a psychological evaluation from Dr. Ingwell, who determined Hill's verbal IQ is 60, his performance IQ is 56, and his full scale IQ is 54. [Filing No. 13-7, at ECF p. 87-89.] Four years later, Hill was evaluated by a consultative examiner, Dr. Robbins, who determined Hill's verbal IQ is 68, his performance IQ is 71, and his full scale IQ is 64. [Filing No. 13-7, at ECF p. 47-50.] Hill argues that these IQ tests—taken past the age of 40—prove the first prong.

Hill cites to *Hendricks v. Astrue*, 2009 U.S. Dist. LEXIS 20529 (S.D. Ind. 2009), and *Guzman v. Bowen*, 801 F.2d 273 (7th Cir. 1986), in support of his argument. In *Hendricks*, the court held that the requirement of initial manifestation was met by the plaintiff's placement in special education classes in school. 2009 U.S. Dist. LEXIS 20529, at *13. In *Guzman*, the Seventh Circuit adopted the Fourth Circuit's rationale that mental retardation is a lifelong condition, and a later IQ test does not preclude a finding of an initial manifestation of retardation. 801 F.2d at 275. Unfortunately, the Commissioner does not address Hill's argument that mental retardation is a lifelong condition. [Filing No. 30.]

5

Hill meets the first prong. Case law supports a conclusion that the record shows Hill had significantly subaverage general intellectual functioning. In *Guzman*, the plaintiff had a full-scale IQ of 69, so there was no question that her impairment was severe. The question in *Guzman* was whether this IQ score—taken after her insured status had expired—could represent her IQ during the onset of her disability. The Seventh Circuit answered this in the affirmative. "In the absence of evidence leading to a contrary result 'we must and do assume' that an IQ test taken after the insured period correctly reflects the person's IQ during the insured period. *Guzman*, 801 F.2d at 275 (citing *Branham v. Heckler*, 775 F.2d 1271, 1274 (4th Cir. 1985). Following *Guzman*, Hill's low IQ scores from 2012 are reasonably representative of his IQ scores during the onset of his intellectual disability.

Case law also supports concluding Hill's intellectual disability initially manifested before the age of 22. In *Hendricks*, the plaintiff had a verbal IQ of 68. The ALJ denied Hendricks benefits, claiming there was no evidence that his mental retardation manifested during the development years. The court used the *Guzman* reasoning to hold that the plaintiff's school history, special education, and dropping out after ninth grade, considered in light of his IQ score, met the requirement of early manifestation. *Hendricks* 2009 U.S. Dist. LEXIS 20529, at *15.

The ALJ rejected Dr. Ingwell's diagnosis of mild mental retardation (full-scale IQ of 54) because "other than evidence of academic difficulties, there is no evidence of such deficits prior to [age 22.]" [Filing No. 13-2, at ECF p. 21.] Like the *Hendricks* plaintiff, Hill was enrolled in special education classes. He also made below average grades and was held back a year. [Filing No. 13-7, at ECF p. 84-86.] Hill's school performance, considered in light of his later IQ, is sufficient to demonstrate subaverage intellectual functioning manifesting before age 22.

Although the ALJ should have explicitly found that Hill meets the first prong, Hill fails to meet the second prong. Hill does not demonstrate deficits in adaptive functioning initially manifested during the developmental period. Hill argues this requirement is met since he cannot use a computer unaided, does not live alone, does not have friends other than his relatives, has trouble reading and writing, and needs help managing funds. [Filing No. 28, at ECF p. 10.] However, a deficit in adaptive functioning is defined as the "inability to cope with the challenges of ordinary everyday life." *Novy v. Astrue*, 497 F.3d 708, 710 (7th Cir. 2007). The ALJ noted that Hill cooks, shops, performs household chores, cares for his children, and takes public transportation unaided. [Filing No. 13-7, at ECF p. 17.] Thus, the ALJ's determination that Hill could cope with the challenges of ordinary life is supported by substantial evidence.

Hill bears the burden of showing that he meets the listing. He has failed to do so. Although Hill meets paragraph C and the first prong of the introductory paragraph of the listing, he failed to demonstrate that he has deficits in adaptive functioning. Thus, the second prong is not met and the Court finds no reversible error.

C.     *Medical Expert*

Hill argues that the ALJ's failure to summon a medical advisor (psychologist) to testify about whether his impairments medically equaled listing 12.05B or 12.05C requires reversal. The Court disagrees.

The ALJ has a "duty to develop a full and fair record." *Smith v. Apfel,* 231 F.3d 433, 437 (7th Cir. 2000). The opinions of the state agency medical consultants are sufficient to determine medical equivalency. 20 C.F.R. 416.927(e). An ALJ may, but is not required to, seek the opinion of a medical expert to consider the nature and severity of an impairment and determine whether the impairment equals one of the listed impairments. 20 C .F.R. 416.927(e)(2)(iii).

Hill argues that the ALJ could not rely on the state agency medical consultants because they did not review his medical treatment from 2013. This medical treatment consists of an emergency room visit in June 2013, when Hill complained of left foot pain but left without being seen, and a return visit in September 2013 for a toxicology blood draw. [Filing No. 13-7, at ECF p. 101-102.] Hill asserts that due to the timing of these reports, the ALJ was required to consult an expert. Hill relies on *Barnett v. Barnhart*, 381 F.3d 664, 671 (7th Cir. 2004), but his reliance is misplaced. In *Barnett*, the court pointed out the ALJ did not consult an expert, but notably, no state agency medical consultant made an assessment. *Id.* The *Barnett* court found error because the ALJ assumed the impairments had no medical equivalence without any supporting evidence or discussion—not simply because he failed to consult an expert. *Id.*

Here, the ALJ was not required to summon an expert just because Hill visited an emergency room a few months after the state agency medical consultants reviewed his record. The ALJ considered the June 2013 visit for foot pain in her opinion. However, there is no reason to believe that a psychologist's opinion on these physical treatments from 2013 would cause the ALJ to conclude differently. The ALJ did not err by not summoning a psychologist to the hearing. The ALJ's conclusion that Hill did not meet or medically equal Listing 12.05 is therefore supported by substantial evidence.

    D.    *Step-Five Determination*

Hill claims the ALJ's step-five determination is erroneous because the ALJ's hypothetical questions to the VE failed to account for Hill's "severe functional limitations due to his chronic pain impairments." [Filing No. 28, at ECF p. 13.] However, Hill merely provides a conclusory statement demanding remand, backed by a list of cases and no analysis. *Id.* He does not explain what the ALJ failed to consider. The Commissioner contends that the limitations

provided by the ALJ reasonably accommodated Hill's impairments. Without reasoned argument to the contrary, the Court agrees. Accordingly, there is no error.

## IV. Conclusion

For these reasons, Plaintiff has not demonstrated that the ALJ committed reversible error. The Court denies Plaintiff's brief in support of appeal [Filing No. 28] and affirms the Commissioner's decision.

Date: 8/29/2016

_____

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution to all counsel of record via CM/ECF.